**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **TROY D. RENKEMEYER and SUSAN M. RENKEMEYER, HUSBAND AND WIFE AS JOINT TENANTS,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,**<br><br>**and**<br><br>**CENTRAL LOAN ADMINISTRATION & REPORTING,**<br><br>**Defendants.** | ) | **Case No. 10-CV-2415 JWL/DWB** |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR JOINT MOTION FOR SUMMARY JUDGMENT**

Come now defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and Central Loan Administration & Reporting ("Cenlar"), by and through counsel and pursuant to Federal Rule of Civil Procedure 56(c)(1)(B) and K.S.A. § 60-256, and respectfully submit this Memorandum in Support of Their Joint Motion for Summary Judgment.

## NATURE OF THE CASE AND INTRODUCTION

Plaintiffs Troy Renkemeyer and his wife Susan bring this quiet title action in an attempt to invalidate their $1,600,000 mortgage. They admit Troy signed a promissory note in this amount and both of them executed a mortgage on their property to secure the debt, but they seek to invalidate the mortgage based upon two alleged legal technicalities. First, the plaintiffs claim that because MERS serves as mortgagee of record as nominee for

the lender and its successors and assigns, the ownership of the note and mortgage are split and the mortgage is unenforceable. Alternatively, the plaintiffs claim that the mortgage is unenforceable because it fails to properly identify the debt it secures.

The relevant facts are not in dispute. These facts prove, as a matter of law, that the plaintiffs cannot succeed on either of their claims.

MERS provides a critical function for the mortgage industry. On behalf of its members, the MERS® System (a database) electronically tacks the transfers of mortgage servicing rights and beneficial ownership interests. MERS is named as the mortgagee on the mortgage solely as nominee, or agent, for the original lender Peoples Bank and its successors and assigns. Because of this agency relationship, there is no severance of the note and the mortgage securing it.

The plaintiffs' claim that the mortgage is unenforceable because it fails to properly identify the debt it secures is equally untenable. Reading the entire text of the mortgage, instead of reading words or terms in isolation (as the plaintiffs invite this Court to do), makes clear that the terms of the mortgage are consistent with the terms of the underlying promissory note. Moreover, the mortgage easily meets the minimum requirements to create a valid lien under Kansas law. Thus, the mortgage remains a valid lien on the plaintiffs' property.

The undisputed facts establish that the plaintiffs cannot prevail on their claims as a matter of law and the defendants are entitled to summary judgment.

## STATEMENT OF UNCONTROVERTED FACTS

The Renkemeyer Note and Mortgage

1. Troy D. Renkemeyer executed a promissory note dated March 23, 2007 to Peoples Bank in the principal amount of $1,600,000 the (“Note”). *See* Plaintiffs’ Statement of Uncontroverted Facts, ¶ 1 and (Exhibit A thereto).

2. On March 23, 2007, Troy D. Renkemeyer and Susan M. Renkemeyer, husband and wife (“Borrower”), executed a Mortgage (“Mortgage”) to secure the repayment of the Note from Peoples Bank in the principal amount of $1,600,000.00. *See* Affidavit of William C. Hultman (“Hultman Aff.”) filed herewith as Exhibit 1, ¶ 30 and Exhibit A thereto.

3. The Mortgage granted a security interest in certain property in Overland Park Kansas, to MERS, as the nominee for Peoples Bank and its successors and assigns. Hultman Aff. at ¶ 31 and Exhibit A thereto.

4. The Mortgage was duly recorded with the Recorder of Deeds’ office for Johnson County, Kansas. *See* Hultman Aff., at ¶ 32 and Exhibit A thereto.

5. The Mortgage and Note both provide that Peoples Bank is the lender who provided the funds in connection with the underlying obligation. *See* Plaintiffs’ Statement of Uncontroverted Facts, ¶¶ 1 and 4 (Exhibits A and C thereto).

6. The Mortgage and Note both provide that the amount of the underlying obligation is one million six hundred thousand dollars ($1,600,000.00). *See* Plaintiffs’ Statement of Uncontroverted Facts, ¶¶ 1 and 4 (Exhibits A and C thereto).

7. The Mortgage and Note both provide that the underlying obligation must be paid in full by April 1, 2037. *See* Plaintiffs' Statement of Uncontroverted Facts, ¶¶ 1 and 4 (Exhibits A and C thereto).

8. The Mortgage defines "Note" as the promissory note that: (a) was signed by "Borrower;" (b) was dated March 23, 2007; (c) stated "Borrower" owed the lender $1,600,000; and (d) stated "Borrower" promised to pay this debt in full not later than April 1, 2037. *See* Plaintiffs' Statement of Uncontroverted Facts, ¶ 4 (Exhibit C thereto).

9. The Mortgage and Note both contain the loan number 07002297 and MIN 100085000000138285. *See* Plaintiffs' Statement of Uncontroverted Facts, ¶¶ 1 and 4 (Exhibits A and C thereto).

10. The Mortgage and Note are both related to the real property located at 14554 Sherwood Road, Overland Park, Kansas 66224 ("Real Property"). *See* Plaintiffs' Statement of Uncontroverted Facts, ¶¶ 1 and 4 (Exhibits A and C thereto).

11. The section of the Mortgage defining "Borrower" provides that additional words are defined in other sections of the document including Sections 3, 11, 13, 18, 20, and 21. *See* Plaintiffs' Statement of Uncontroverted Facts, ¶ 4 (Exhibit C thereto).

12. Section 13 of the Mortgage provides that any person included in the definition of "Borrower," but who are, in fact, not obligated on the underlying note or obligation are referred to in the Mortgage as co-signers. *See* Plaintiffs' Statement of Uncontroverted Facts, ¶ 4 (Exhibit C thereto).

13. As of the date of the Note and Deed of Trust, Peoples Bank was a MERS member and it remained a MERS member during the entire time that it was the owner of the Note. *See* Hultman Aff., at ¶ 33, and Exhibit B thereto.

14. Pursuant to MERS' Rules of Membership and Terms and Conditions, Peoples Bank appointed MERS to act as its agent to hold the Mortgage as nominee on behalf of Peoples Bank and Peoples Bank's successors and assigns. *See* Hultman Aff., at ¶ 34.

15. MERS' Terms and Conditions and Rules require the member, to "promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System" and state that "MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time." *See* Hultman Aff., at ¶ 35 and Exhibits C and D thereto.

16. Pursuant to MERS' Rules, MERS agrees to at all times comply with the instructions of the holder and beneficial owner of mortgage loan promissory notes. *See* Hultman Aff., at ¶ 36 and Exhibit D thereto.

17. All of the above-referenced provisions of MERS' Rules and Terms and Conditions were incorporated into Peoples Bank's agreement in 2002 and have not changed since that time. *See* Hultman Aff., at ¶ 34.

18. According to MERS' records, Peoples Bank sold the Note to 1000586 Home Loans, Inc. FKA Thornburg Mortgage Home Loan Inc. ("TMST") on or about April of 2007. *See* Hultman Aff., at ¶ 38 and Exhibit E thereto.

19. TMST was at that time, and remains today, a member of MERS subject to MERS' Terms and Conditions and Rules of Membership. *See* Hultman Aff., at ¶ 38 and Exhibit F thereto.

20. According to MERS' records, TMST remains the current investor and the current owner of the Note. *See* Hultman Aff., at ¶ 39 and Exhibit E thereto.

21. TMST is the successor and assign of the interest of Peoples Bank in the Note. *See* Hultman Aff., at ¶ 40.

22. Since the inception of the Renkemeyer Mortgage, MERS has continuously served as mortgagee of record as nominee or agent for the owners of the Note: Peoples Bank and then TMST. *See* Hultman Aff., at ¶ 41.

MERS and the MERS® System

23. Mortgage Electronic Registration Systems, Inc. is a wholly-owned subsidiary of MERSCORP, Inc., a private stock corporation whose shareholders and members include originating lenders and secondary investors that use its services. *See* Hultman Aff. at ¶ 5.

24. MERS was developed in 1993 when Fannie Mae, Freddie Mac and Ginnie Mae published a white paper that analyzed the need for an electronic mortgage registration system for mortgage rights. *See* Hultman Aff., at ¶ 7.

25. Originating lenders routinely sell mortgage loans on the secondary market to investors such as Fannie Mae or Freddie Mac, which provides capital for the originator to finance more loans. *See* Hultman Aff., at ¶ 8.

26. The secondary mortgage market is crucial to the United States credit and housing markets because the ability of lenders to replenish their credit directly impacts the lenders' willingness to extent credit and the interest rates charged for the risk the lenders assume. *See* Hultman Aff., at ¶ 9.

27. Since the investors in the secondary market often consist of institutional entities such as mutual funds and insurance companies, those entities often contract with servicing companies to handle the loan servicing obligations. *See* Hultman Aff., at ¶ 10.

28. Prior to MERS, the investor or its designee would typically hold the note, with the servicing company appearing as the mortgagee in the land records. *See* Hultman Aff., at ¶ 11.

29. If the servicing rights in the loan were sold or assigned, or in the absence of a servicing entity, if the investor's interest in the note was sold or assigned, those assignments had to be recorded in the land records to ensure that the proper entities received notice of actions impacting the security interest. *See* Hultman Aff., at ¶ 12.

30. The process of drafting and recording multiple assignments was costly and burdensome—creating needless expense in terms of transaction costs, lawyers' fees, and filing fees. *See* Hultman Aff., at ¶ 13.

31. In addition, multiple assignments of mortgage interests led to errors and uncertainty in the chain of title because assignments were often missing, incomplete, inaccurate, or misfiled. *See* Hultman Aff., at ¶ 14.

32. These costs were often passed to the consumers—buyers and sellers of real estate. *See* Hultman Aff., at ¶ 13.

33. It is estimated that the expenses associated with these filings added some $30 to the cost of a loan, and often more when mistakes were made. *See* Hultman Aff., at ¶ 15.

34. These problems led consumer-oriented government corporations and agencies, including Fannie Mae, Freddie Mac, Ginnie Mae, the Federal Housing Administration, and the Department of Housing and Urban Development, and the

Department of Veterans Affairs, to participate in the creation of MERS. *See* Hultman Aff., at ¶ 16.

35. The MERS® System is designed to allow its members, which include originators, lenders, servicers, and investors, to track transfers of servicing rights and beneficial ownership. *See* Hultman Aff., at ¶ 17.

36. Members pay annual membership fees for the right to register loans on the MERS® System, a registration fee to register a loan on the MERS® System, and transaction fees for other transactions and services performed on the MERS® System. *See* Hultman Aff., at ¶ 18.

37. Every mortgage registered on the MERS® System has a unique mortgage identification number. *See* Hultman Aff., at ¶ 19.

38. When a new loan is issued by a MERS' member, the borrower, pursuant to its membership agreement with MERS, executes a deed of trust or mortgage (depending on the state) that is recorded in the land records. *See* Hultman Aff., at ¶¶ 19-20.

39. The deed of trust or mortgage grants a security interest in the subject property to Mortgage Electronic Registration Systems, Inc. as beneficiary or mortgagee as nominee for the lender and the lender's successors and assigns. *See* Hultman Aff., at ¶ 21.

40. Mortgage Electronic Registrations Systems, Inc. holds legal title to the interests granted by the lender in the mortgage or deed of trust and generally has the right, as beneficiary or mortgagee, as nominee for the lender, to exercise any or all of the lender's interests in the property. *See* Hultman Aff., at ¶ 21.

41. Mortgage Electronic Registration Systems, Inc. will typically remain the mortgagee of record throughout the life of the loan. *See* Hultman Aff., at ¶ 22.

42. Transfers between lenders or servicing contracts are tracked electronically through the MERS® System. *See* Hultman Aff., at ¶ 22.

43. One of the services MERS provides for its members is to keep track of the servicing entity and the note owner and to receive on their behalf legal notices of foreclosures, tax sales or other proceedings impacting the note-owner's interests in property. *See* Hultman Aff., at ¶ 23.

44. MERS has eliminated the need to scour land records (at least for properties registered with MERS) in search of multiple assignments that may have been filed incorrectly or not filed at all. *See* Hultman Aff., at ¶ 25.

45. The MERS® System has facilitated title companies' ability to efficiently and accurately provide lien releases and title opinions, to the benefit of real estate purchasers. *See* Hultman Aff., at ¶ 26.

46. Since MERS' records are entirely electronic, MERS can provide consumers, title companies and purchasers with instantaneous on-line access to information about who is servicing a particular loan. *See* Hultman Aff., at ¶ 27.

47. Servicers are usually the only parties with access to the payoff statement – information that, for example, helps homeowners avoid foreclosure, exercise their right of redemption, and close on the sale of their home. *See* Hultman Aff., at ¶ 27.

48. At this time, approximately 50% of residential mortgages (or some 63 million loans) are registered on the MERS® System. *See* Hultman Aff., at ¶ 28.

49. MERS estimates that since its inception, the MERS® System has saved the mortgage industry at least $1 billion. These savings have largely been passed on to the real estate consumers. *See* Hultman Aff., at ¶ 29.

Procedural History of This Litigation

50. Plaintiffs Troy Renkemeyer and wife Susan filed this Complaint to Quiet Title, naming MERS and Central Loan Administration & Reporting ("Cenlar") as defendants. (Doc. 1). Plaintiffs admit execution of the Note and the Mortgage. Doc. 1.

51. Plaintiffs thereafter attempted to dismiss MERS on the ground that MERS, having no independent interest as mere nominee of the lender, was not a necessary party in this case. Doc. 25, at 2. This Court denied that motion. Doc. 25, at 6.

52. Plaintiffs have now filed a motion for summary judgment, Doc. 16, and the defendants are filing a joint cross-motion for summary judgment on the same issues raised in plaintiffs' motion.

## QUESTIONS PRESENTED

I. Whether the Mortgage is enforceable when MERS holds legal title to the Mortgage as agent for the original lender and its successors and assigns?

II. Whether the Mortgage is enforceable when the husband and wife are listed as "Borrower" on the Mortgage, but only the husband is listed as "Borrower" on the Note?

## ARGUMENT

Pursuant to Federal Rule of Civil Procedure 56(b), a party is entitled to summary judgment if the pleadings and other evidence before the court show "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only disputes of material fact preclude summary judgment. *Ando v. Great Western Sugar Co.*, 475 F.2d 531, 536 (10th Cir. 1973)(summary judgment should be granted where only issues of fact are "irrelevant"

or "spurious"). The district court "is under a duty to grant summary judgment in an appropriate case" where the undisputed facts establish the movant's right to judgment as a matter of law. *Id.* at 533.

Here, both parties have moved for summary judgment on the same essential issues, and those motions demonstrate that the material facts are not in dispute. These facts, and the governing law, establish that defendants MERS and Cenlar are entitled to judgment in their favor as a matter of law.

## I. The Beneficial Interests In The Note And Mortgage Are Not Severed.

Plaintiffs claim that the Mortgage is unenforceable – and was rendered so upon inception – because MERS' structure creates a severance of the interests under the Note and Mortgage. But the undisputed facts establish that MERS holds the Mortgage only as nominee, or agent, for the original lender and its successors and assigns. This agency relationship defeats plaintiffs' argument as a matter of law.

### A. Standard of Review.

Kansas generally follows the Restatement of Property governing mortgage interests. *Fidelity Bank v. King*, 136 P.3d 465, 468 (Kan. 2006)("In this statutory vacuum, we look to the Restatement (third) of Property: Mortgages . . . "); *American General Financial Services, Inc. v. Carter*, 184 P.3d 273, 278 (Kan. App. 2008)(construing Kansas statute in a manner consistent with the Restatement of Property).

Section 5.4 of the Restatement (Third) of Property recognizes that a mortgage may be enforced by one acting on behalf of the mortgagee and that this arrangement does not render the deed of trust invalid. Restatement (Third) of Property § 5.4, p. 385 (comment e). Because the separation of the promissory note and mortgage renders the note

unsecured, the common law strives to achieve unity of these interests even if the courts must supply gaps in the documents. *Id.* at 380-81. This is because any other result "is economically wasteful and confers an unwarranted windfall on the mortgagor." *Id.* at 380.

Therefore, if the validity of the mortgage turns upon an agency relationship, any doubts regarding that relationship must be resolved in favor of the validity of the deed of trust.

> The trust or agency relationship may arise from the terms of the assignment [of the mortgage to the mortgagee of record], from a separate assignment or from other circumstances. Courts should be vigorous in seeking to find such a relationship, since the result is otherwise likely to be a windfall for the mortgagor and the frustration of [the note owner's] expectation of security.

*Id.*

A windfall is precisely what the Renkemeyers seek here. They the lien on their property and eliminate the note owner's ability to enforce its security interest in the event of nonpayment based upon an alleged legal technicality that does not exist. If they prevail, not only will the subject Note become unsecured, but the decision could have the same result for the hundreds of thousands of MERS mortgages in the State of Kansas, to the frustration of the note owners that relied upon the validity of these security interests. That result is not justified. The testimony and exhibits in this case leave no doubt regarding the agency relationship between MERS and the owners of the Note. And to the extent any doubts exist, they must be resolved in favor of the enforceability of the Mortgage.

### B. <u>The Undisputed Facts Establish That MERS Was The Agent For Peoples Bank When The Mortgage Was Executed.</u>

It is undisputed that Troy Renkemeyer executed the Note in the amount of $1,600,000 from Peoples Bank and both the Renkemeyers executed the Mortgage to secure

that loan. Defendants' Statement of Uncontroverted Facts ("SOF"), ¶¶ 1-2. The Mortgage names MERS as the mortgagee in its capacity as nominee for the Lender and the Lender's successors and assigns:

> MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument.

SOF, ¶ 3 & Ex. A to Hultman Aff. The Mortgage further states that:

> MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender . . . .

*Id.*

This language is consistent with the requirements of MERS' membership agreement with Peoples Bank. That entity's membership agreement binds Peoples Bank "to abide by all existing MERS Rules and Procedures, which are incorporated herein by reference and may be amended from time to time" and to comply with all MERS' Terms and Conditions. SOF, ¶ 13 & Ex. B. to Hultman Aff.

MERS' Rules of Membership require that the member "shall cause Mortgage Electronic Registration Systems, Inc. to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System." SOF ¶ 15 & Ex. D to Hultman Aff. The Rules further provide that "MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes" and in particular instructions from the beneficial owner of the loan. SOF, ¶ 16 & Ex. D to Hultman Aff.

MERS' standard Terms and Conditions similarly provide:

> The Member, at its own expense, shall promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System. MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time.

SOF, ¶ 15 & Ex. C to Hultman Aff. These provisions of the Rules and Terms and Conditions were incorporated into Peoples Bank's agreement in 2002 and have not changed since that time. SOF, ¶ 17.

Plaintiffs argue that because MERS, rather than Peoples Bank, appears as the mortgagee of record, the interests in the Note and Mortgage were severed. That is directly contrary to the black letter law that a promissory note and the deed of trust securing it are, as a general rule, inseparable. *See Bank Western v. Henderson*, 255 Kan. 343, 874 P.2d 632 (1994) *citing Middlekauff v. Bell*, 111 Kan. 206, 207 (1922) ("The Plaintiff did not need [an] assignment in order to invest [the plaintiff] with ownership of the Mortgage. [The plaintiff] acquired full title by purchasing the Note which it secured . . . "); *Kurtze v. Sponable*, 6 Kan. 395, 396 (1870)("Under our laws, the mortgage is but appurtenant to the debt, a mere security; and, under ordinary circumstances, whoever owns the debt owns the mortgage.") A mortgage thus automatically confers on the payee of the note the right to enforce the mortgage to protect the payee's interests therein.

When the Mortgage was executed and recorded, it automatically vested in the beneficiary under the Note, Peoples Bank, all the beneficial interests under the Mortgage and all rights of enforcement conferred therein. That is the case regardless of the fact that Peoples Bank chose to allow MERS to hold legal title to those interests on its behalf.

The use of the word "nominee" rather than "agent" is irrelevant. The Kansas courts recognize that "the legal status of a nominee . . . depends upon the context of the

relationship of the nominee to its principal" and could encompass anything from a straw man or limited agent to an agent with all the rights of the principal. *Landmark National Bank v. Kesler*, 289 Kan. 528, 216 P.3d 158 (2009); *Thompson v. Meyers*, 505 P.2d 680 (Kan. 1973). *See also Black's Law Dictionary* (8th Ed. 2004) at 1076 (defining a nominee as a "party who holds bare legal title for the benefit of others.").

No particular words are necessary to create an agency relationship in Kansas. An express agency arises when the principal has delegated authority to the agent by any words that expressly authorize the agent to do a delegable act. *In re Scholastic Book Clubs, Inc.*, 920 P.2d 947, 953 (Kan. 1996). The principal's right to control the agent is the single most important consideration in identifying an agency relationship. *McDonnell v. Music Stand, Inc.*, 886 P.2d 895, 899 (Kan. App. 1995).

The language of the recorded Mortgage authorizes MERS to perform specific delegable acts for the lender and its assigns – holding legal title to the mortgage and exercising any of the rights granted to the lender thereunder. MERS' membership agreements confirm that MERS does so only at the direction and control of its lender members. SOF, ¶ 16 & Ex. D to Hultman Aff. Here, the context of the relationship proves that, as "nominee," MERS serves as the lender's agent for these specific purposes.

This agency relationship defeats the plaintiffs' argument that the Note and Mortgage were split at inception. On March 23, 2007, when the loan was made and Mortgage recorded, MERS held legal title to the Mortgage on behalf of Peoples Bank. When TMST purchased the loan, MERS continued to hold the security interest on behalf of TMST as the successor and assign of the original lender. At all times, the owner of the note held the beneficial interest in both the Note and the Mortgage.

### C. <u>MERS' Structure Is Consistent With Established Principles Of Real Estate Law</u>.

As set forth above, the Restatement of Property explains that there is no severance of the note and mortgage if the party holding the mortgage has authority from the note holder to enforce the mortgage. Restatement (Third) of Property, § 5.4, p. 380 ("a mortgage may be enforced only by, *or in behalf* of, a person who is entitled to enforce the obligations the mortgage secures.") The named mortgagee "may be a trustee or agent of [the note owner] with responsibility to enforce the mortgage at [the note-owner's] direction." *Id.*

Illustration 9 is particularly instructive. The note owner assigns the mortgage to another and the assignment states that "Mortgagee is hereby designated as agent of Assignee with a duty to foreclose the mortgage upon Assignee's request." According to the Restatement, the mortgage is valid and the mortgagee may enforce the mortgage on behalf of the note-owner. *Id.*

The requisite agency relationship may arise from the terms of the documents, in a separate agreement between the parties, or other circumstances, and the courts must "be vigorous" in identifying such agreements with the goal of protecting the note owner's security interest. *Id.* Even in the absence of any language creating an agency relationship, the mortgage interest will be upheld when there is a pattern of prior conduct for the mortgagee to serve as the assignee's agent for purposes of holding and enforcing the mortgage interest. *Id.* at 386 (Illustration 10).

Here, this Court need not strain to find the agency relationship. It is clearly set forth in the Mortgage and in the separate membership agreements between MERS and

Peoples Bank. MERS' role on the Mortgage fits squarely within the established rule that one party can serve as the beneficiary for another and enforce the mortgage on its behalf.

If MERS' role invalidated the deed of trust at its inception, as the plaintiffs assert, hundreds of thousands of loans in Kansas may be rendered unsecured, with potentially devastating consequences for MERS' business model as well as the mortgage industry and housing economy in the State. In addition, other routine transactions are upset. It is not unusual for one person or entity to hold a mortgage interest in the land records on behalf of another. A trustee may hold on behalf of a cestui, a parent on behalf of minor child, a guardian on behalf of a ward, or a straw man or corporation on behalf of an undisclosed principal. Long before MERS was created, servicers on loans often held the record interest in mortgages on behalf of the beneficial owners of the loans. SOF, ¶ 28. All of these long-standing arrangements could be undone by the relief plaintiffs seek in this case.

### D. Recent Decisions Recognize That MERS' Role On A Mortgage Does Not Render The Mortgage Unenforceable.

A recent decision from the United States Bankruptcy Court for the Western District of Missouri is on point. *In re Tucker*, 2010 WL 3733916 (Bank. W.D. Mo. September 20, 2010). The holder of a promissory note sought relief from stay to commence foreclosure proceedings. The trustee opposed the motion, claiming that the note and the deed of trust were split in that MERS was named as the beneficiary on the deed of trust as nominee for the lender and its successors and assigns. *Id.* at *2.

Following a thorough discussion of the role that MERS serves in the mortgage industry, the bankruptcy court granted the relief from stay. The court determined that the language in the deed of trust, language identical to that in the Renkemeyer Mortgage, "is more than sufficient to create an agency relationship between MERS and the Lender and

its successors in Missouri, regardless of what term they used to describe that relationship" and that the lenders "signed up for this agency relationship in their membership agreements." *Id*. at 6.

> The language of the recorded Deed of Trust clearly authorizes MES to act on behalf of the Lender in serving as the legal title holder to the beneficial interest under the Deed of Trust and exercising any of the rights granted to the Lender thereunder.
> . . . .
> Assuming that the note-holder is a member of MERS, thereby creating an agency relationship, the fact that MERS is identified as the beneficiary under a deed of trust for the benefit of the note-holder does not create a split between the note and deed of trust.

*Id*. at *6-7 (emphasis added).[1]

*Ciardi v. Lending Company, Inc.*, 2010 WL 2079735 (D. Az. 2010), is in accord. The *Ciardi* plaintiffs, like the plaintiff here, asserted that MERS' status as beneficiary of the deed of trust severed the deed from the note. Dismissing the complaint for failure to state a cause of action, the district court held that MERS had the right to enforce the deed of trust:

> [T]he very language of the deed of trust, which Plaintiffs quote in their amended complaint, states that MERS will serve as the nominee for the original lender as well as the original lender's successors and assigns. Thus, from the very language of the deed of trust, to which Plaintiff Bianca Ciardi agreed to in entering into the home loan transaction, MERS is still acting as the nominee for the current holder of the promissory note.

2010 WL 2079735 at *3.

The *Ciardi* plaintiffs also argued that the failure to disclose the assignment of the note somehow nullified MERS' status as beneficiary. Once again, the Court disagreed:

---

[1] Plaintiffs' rely upon an earlier decision from Judge Federman in the case of *In re Box*, Case No. 10-20086 (June 3, 2010). In that order, Judge Federman held only that the movant was not entitled to relief from stay to foreclose because it had not produced evidence that it held the note. The order specifically declined to determine the impact of MERS' role on a deed of trust – the issue the Judge took up in *Tucker*. Judge Federman subsequently granted the motion for relief in the *Box* case when the movant produced satisfactory evidence that it was the holder of the note. (Exhibit 2).

> [T]he language in the deed of trust confers an agency relationship between MERS and the original and successive lenders without the need to produce a separate agency contract each time the promissory note is sold.

2010 WL 2079735 at *4 (emphasis added).

In another recent decision, the United States District Court of the Eastern District of Missouri recognized that MERS' role as beneficiary on a deed of trust, as nominee for the lender and its successors and assigns, gave MERS the right to enforce the deed of trust. *Mortgage Electronic Registration Systems, Inc. v. Bellistri,* 2010 WL 2720802 (E.D. Mo. July 1, 2010). In that case, MERS sought a declaration that a tax purchaser's failure to provide MERS with notice of redemption rights following a tax sale violated Missouri statute and deprived MERS of federal due process rights. The district court agreed.

The court found that MERS' status as beneficiary under a deed of trust, "as nominee for the Lender and Lender's successors" was a property right entitled to due process. *Bellistri,* 2010 WL 2720802, at *13. "MERS has a legal right to file suit to foreclose the mortgage under § 443.190" and "the right to enforce the lien on the property via a power of sale in the trustee." *Bellistri,* 2010 WL 2720802, at *14. Since MERS' interest was sufficient to bring an action at law, *i.e.*, a foreclosure action, it was a property interest entitled to due process protection. *Id.*

The tax purchaser had argued that the deed of trust was invalid due to a splitting of the note and deed of trust. The district court necessarily rejected the argument when it held that MERS' rights to foreclose and enforce the lien under the deed of trust were "substantial" property rights. *Id.*

Other courts have recognized that MERS' interest as nominee for the lender and its assigns gives MERS an enforceable right in the mortgage, including the right to foreclose

on the debtors' property. *See, e.g., Trent v. Mortgage Electronic Registration Systems, Inc.*, 288 Fed. Appx. 571, 572 (11th Cir. 2008); *Mortgage Electronic Registration Systems, Inc. v. Azize*, 965 So.2d 151 (Fla. App. 2007); *In re Huggins*, 357 B.R. 180 (D. Mass. 2006); *In re Sina*, 2006 WL 2729544 (Minn. Ct. App. 2006), review denied (Dec. 12, 2006)(unpublished). *See also Suss v. JP Morgan Chase Bank, N.A.*, 2010 WL 2733097 (D. Md. July 9, 2010)(finding that transfers of beneficial interests in mortgage loan through MERS' system of recordation are valid).

### E. *Landmark* Does Not Support Plaintiffs' Argument.

Plaintiffs cite no cases, statute or other authority that support their position. In fact, they do not cite one case invalidating a MERS' mortgage on the grounds that MERS' role severs the note and mortgage. Plaintiffs' argument is based almost entirely on dicta from the *Landmark National Bank v. Kesler*, 289 Kan. 528, 216 P.3d 158 (2009). The holding of that case has no bearing here.

The actual holding in *Landmark* was only that the trial court did not abuse its discretion in denying MERS' motion to set aside a default judgment approving a foreclosure sale and motion to intervene as of right in that action. The rationale was that MERS had not proven that it suffered "direct, ascertainable loss" as a result of the foreclosure sale. 216 P.3d at 170.[2] This Court has recognized that *Landmark's* limited holding does not mandate the conclusion the plaintiffs seek. "[E]ven if Landmark could

[2] The Kansas court's legal conclusion was wrong because it does not even mention the controlling authority from the United States Supreme Court in *Sprint Communications Co. v. APCC,* 554 U.S. 269 (2008). *Sprint* squarely holds that an assignment of bare legal title does create a "property right" in the assignee. In MERS' case, that property interest carries with it the right to file a lawsuit and the right to enforce the lien. These rights warrant due process protection under federal law. Moreover, the *Landmark* court did not even consider the loss to MERS in terms of the potential lost business from its decision.

carry some weight, that case stood in a different procedural posture, and the Kansas Supreme Court specifically declined to decide whether MERS was entitled to be a party to the initial foreclose action." Order Denying Motion to Dismiss MERS, Doc. 25, at 5.

The *Landmark* court indicated, in dicta, that MERS' relationship to its principal may be "more akin to a straw man than to a party possessing all the rights given a buyer," noting only that the mortgage in that case referred to the lender's rights to collect payment and to enforce the debt obligation. 216 P.3d at 166. In so doing, the court ignored the critical language in the mortgage granting MERS authority to exercise "any and all" rights of the lender, including the right to foreclose. *Id.* at 165. Moreover, MERS' membership agreements with the lender, and the relevant provisions of MERS' Terms and Rules, were not presented to the court. As pointed out in the preceding section, where that evidence is presented, the courts have consistently found the requisite agency relationship.

The *Landmark* court also stated that "in the event" that the mortgage loan somehow becomes separated from the security interest, the mortgage "may" become unenforceable. *Id.* at 166-67, citing to the Missouri Court of Appeals' decision in *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619 (Mo. App. 2009), for the proposition that "unless the holder of the deed of trust is the agent of the holder of the note," the person holding only the note may lack the power to foreclose. *Id.* at 167. But neither the Kansas nor Missouri courts actually decided whether such a severance occurred in those cases.

The Missouri case arose from the same tax sale at issue in *Bellistri,* but the evidence presented and issues decided were quite different. In *Ocwen*, the court of appeals held only that Ocwen lacked standing to challenge a quiet title judgment following a tax sale. 284 S.W.3d at 623-24. Again, the Missouri court stated, in dicta, that the "practical

effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, *unless the holder of the deed of trust is the agent of the holder of the note*." *Id.* at 623 (emphasis added)(citing Restatement (Third) of Property, § 5.4). The *Ocwen* court held that, under the facts in that record, it appeared that MERS assigned the deed of trust to Ocwen separate from the note, potentially rendering the assignment ineffectual and leaving Ocwen with no interest thereunder. 284 S.W.3d at 623-24. But the court did not decide that issue – or the existence of an agency relationship that would validate the note under the cited Restatement provision – because there was no evidence of the current ownership of the note. *Id.*

In contrast, when evidence was presented to establish that MERS held legal title to the deed of trust on behalf of the current note-holder, the district court held that MERS did have standing to challenge the very same tax sale. *Bellistri,* 2010 WL 2720802, at *15. Because MERS held the deed of trust as agent for the note owner, MERS was entitled to bring suit to redress the injury to its principal. "MERS has standing to assert the injury in fact sustained by [the current note holder]: the loss of the security for the loan acquired." *Id.*

The district court summarily rejected the tax purchaser's argument that MERS' claim was barred by the Missouri Court of Appeals' decision in *Ocwen*, holding that the "sole basis for the *Ocwen* ruling" was the Missouri court's determination that Ocwen lacked standing. *Id.* at *17.

The evidence lacking in *Landmark* and *Ocwen* is before this Court. That evidence proves that MERS held the mortgage as agent for the owners of the Note and that the mortgage remains valid and enforceable. *Tucker*, *Bellistri*, and *Ciardi* – all decided after

the Landmark case – so hold. *See also McGinnis v. GMAAC Mortgage Corp.*, 2010 WL 3418204, *3 (D. Utah Aug. 27, 2010)(finding that *Landmark* does not mean that MERS lacks authority to appoint a trustee, noting that *Landmark's* holding reflects the limited question "whether MERS was an indispensible party who should have been allowed to intervene in a foreclosure action initiated by another lender," and that the *Landmark* court "fail[ed] to recognize the agency relationship that is created by the language in the Deed of Trust designating it as beneficiary*"); Blau v. Am.'s Serv. Co.*, 2009 WL 3174823, at * 2 (D. Ariz. Sept. 29, 2009)(*Landmark* stated only that one possessing a deed of trust cannot foreclose without also having an interest in the note or "obtaining permission to act as agent of the note-holder").

The only other cases cited by plaintiffs are all inapposite, standing only for the unremarkable proposition that a plaintiff is not entitled to enforce a mortgage or foreclose absent proper evidence that it holds the promissory note and that an assignment from MERS does not satisfy this requirement absent evidence that MERS owned the note at the time of the assignment. *See, e.g.*, *LaSalle Bank Nat. Assoc. v. Lamy*, 2006 WL 2251721 (N.Y. Sup. 2006), *In re Wilhelm*, 4-7 B.R. 392 (Bankr. D. Idaho 2009). That issue is not before this Court. MERS does not claim any ownership interest in the Renkemeyer Note, and it has not purported to assign any such interest in this case.

The undisputed facts prove that there was no severance of the beneficial interests under the Note and Mortgage. Defendants are entitled to summary judgment in their favor on this issue.

## II. The Mortgage Sufficiently Identifies The Debt It Secures.

The plaintiffs argue that the Mortgage is invalid because it fails to accurately identify the debt it purports to secure. *See* Doc. 28 pp. 12-13. The logic of the plaintiffs' argument can be quickly summarized as follows: (1) the Mortgage defined "Borrowers" as Troy D. Renkemeyer and Susan M. Renkemeyer; (2) the Mortgage defined "Note" as the promissory note signed by "Borrower;" (3) the Note was only signed by Troy, not Susan; (4) thus, the Mortgage fails to identify the Note. *See* Doc. 28 pp. 12-17. This argument, however, ignores the plain language of the Mortgage, which as the plaintiffs concede, is unambiguous.

Section 13 of the Mortgage provides:

> **Joint and Several Liability; Co-signers; Successors and Assigns Bound**. Borrower covenants and agrees that Borrower's obligations should be joint and several. *However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer")*: (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signers interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can extend, modify, forbear, or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent. (emphasis added).

Thus, Section 13 effectively excludes from the definition of "Borrower" any co-signers such that the mortgage properly identifies the obligor of the underlying obligation, and the Mortgage is valid. *See, e.g., In Re Beckhart*, 2010 WL 1416807, at *6 (Bankr. E.D.N.C. 2010).

The *Beckhart* case is particularly instructive and factually indistinguishable from the present case. Just as here, the plaintiffs in *Beckhart* sought to invalidate a deed of trust because it listed the husband and wife as "Borrower" on the deed trust, but only listed the husband as "Borrower" on the underlying promissory note. *Id.* In analyzing Section 13 of

the deed of trust, which is identical to the language of Section 13 of the Mortgage here, the court rejected the plaintiffs' argument, holding:

> [Husband and Wife] are listed as the Borrower in the definitions section on the first page of the Deed of Trust. [Wife] may have held an interest in the Real Property and therefore, may have been a trustor whose consent was required to allow the lien to attach to the Real Property. As such, listing her name in the definition of "Borrower," which includes trustors, does not contradict the terms to the Note only signed by [Husband]. The language of Section 13 clearly limits the definition and attempts to clarify that the term "Borrower" is not meant to be those parties or entities who may be obligated under the Note but, instead that a "Borrower" may, in fact, be a "co-signer" who may hold an interest in the property to be secured by the deed of trust. Therefore, by reading Section 13 of the Deed of Trust in connection with the definition of "Borrower," the Court finds that the reference to [Wife] as a "Borrower" is not contradictory to the terms of the Note and, therefore, does not invalidate the lien created by the Deed of Trust.

*Id.*

The reasoning in *Beckhart* applies equally here. Susan may have held an interest in the Real Property, and therefore, may have been a mortgagor whose consent was required to allow the lien to attach to the Real Property. As such, listing her name in the definition of "Borrower," which includes mortgagors, does not contradict the terms of the Note only signed by Troy. The language of Section 13 clearly limits the definition of "Borrower" on the Mortgage and clarifies that the term "Borrower" excludes "co-signers," such as Susan. Thus, by reading Section 13 of the Mortgage in connection with the definition of "Borrower," the reference to Susan as a "Borrower" is not contradictory to the terms of the Note and, therefore, does not invalidate the lien created by the Mortgage.

Just as the plaintiffs in *Beckhart*, the plaintiffs here rely on *Putnam v. Ferguson.*, 130 N.C. App. 95, 502 S.E.2d 386 (1998), *In re Foreclosure of Deed of Trust of Enderle*, 110 N.C.App. 773, 431 S.E.2d 549 (1993), and *In re Head Grading, Co.*, 353 B.R. 122

(Bankr. E.D.N.C. 2006). As the court in *Beckhart* aptly noted, reliance on these cases is misplaced. *Beckhart*, 2010 WL 1416807 at *4 ("The date on the deed of trust and the date on the underlying note were contradictory in *Head Grading*. [citation omitted] However, the facts in this case are different"), *6 ("Unlike the North Carolina decisions cited by the [plaintiffs], there is no third party obligation at issue in this case and therefore, *Putnam* is not applicable to these facts"). The plaintiffs' reliance on *Ethridge v. Tierone Bank*, 226 S.W.3d 127 (Mo. banc 2007), is equally misplaced. In *Ethridge* the issue was whether the deed of trust conveyed a valid lien to the lender on [wife's] interest in the land, *even though she was not listed as a borrower on the deed of trust*. *Id.* at 131. Thus *Ethridge* is distinguishable, where the question here is whether the inclusion of Susan in the definition of Borrower invalidated the lien created by the Mortgage.

The plaintiffs are essentially asking this Court to establish a bright line rule as to the requirements for identifying the debt referenced in a mortgage. This Court should decline such an invitation. Under well settled Kansas law,

> "[N]o particular 'form' of instrument is necessary and no particular words are required. The 'form' of an agreement by which security is given is unimportant if the purpose plainly appears. All that is necessary is that there be a debt and that the instrument creates a lien on real property as security for the payment of the debt."

*Assembly of God v. Sangster*, 178 Kan. 678, 680, 290 P.2d 1057 (1955) (cited with acceptance by *Blair Construction, Inc. v. McBeth*, 273 Kan. 679, 689, 44 P.3d 1244 (2002) ("It is well established that there are no special formalities required in order to create a mortgage")). Not only does the Mortgage correctly identify the debt by borrower, as discussed above, it correctly identifies other defining characteristics of the debt, including the date it was signed, the amount it secured, and the maturity date of the debt. SOF, ¶ 8. Additionally, both the Mortgage and the Note clearly relate to the same Real Property and

same transaction. SOF, ¶¶ 5-7, 9-10. Thus, the purpose of the Mortgage plainly appears: secure the debt evidenced by the Note by creating a lien on the Real Property as the security for the payment of said debt. Nothing more is needed for the Mortgage to be valid.

The plaintiffs rely on *Emporia State Bank & Trust Co. v. Mounkes*, 214 Kan. 178, 519 P.2d 618, 181 (1974), and quote from that case "mortgages, by the use of general terms, ought never to be so extended as *to secure debts which the debtor did not contemplate.*" *See* Doc. 28 pp. 12-17 (emphasis added). It is odd the plaintiffs would choose to quote this sentence from *Emporia State Bank* in that nothing could be more clear in the instant case than the fact that both plaintiffs *did intend* to secure the debt with the Mortgage. This intent is paramount where construction of the Mortgage at issue:

> Where the construction of a mortgage is brought in issue the primary question for determination is what was the intention of the parties. In arriving at a decision of the matter, all the circumstances attending the execution of the mortgage and the nature of the transaction are to be considered as well as the language of the instrument itself.

*Emporia State Bank*, 519 P.2d at 181. The undisputed facts show that Susan signed the Mortgage, and therefore, clearly intended to secure the debt with a mortgage on the Real Property. Thus, *Emporia State Bank*, and particularly that portion of the decision quoted by the plaintiffs, supports Defendants' position in that the Mortgage identifies the debt it is intended to secure and secures the debt as contemplated by the plaintiffs.

In short, the information related to the underlying obligation in the Mortgage is not contradictory to the Note. The Mortgage properly and accurately identifies the underlying obligation and thus, is a valid lien, as a matter of law.

## CONCLUSION

For all the reasons set forth herein, defendants respectfully request this Court to grant their motion for summary judgment and to enter judgment in their favor on all the claims in plaintiffs' complaint and to grant such other and further relief as this Court deems appropriate.

Respectfully Submitted,

HUSCH BLACKWELL LLP

By: *<u>/s/ Steven Martin Aaron</u>*
Steven Martin Aaron, KS #15926
4801 Main, Suite 1000
Kansas City, MO 64112
Telephone: (816) 983-8000
Facsimile: (816) 983-8080
steve.aaron@huschblackwell.com

and

*/s/ JoAnn T. Sandifer*

JoAnn T. Sandifer, MO #38602

190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Telephone: (314) 480-1500
Facsimile: (314) 480-1505
joann.sandifer@huschblackwell.com

*Attorneys for Mortgage Electronic Registration Systems, Inc.*

AND

SANDBERG, PHONEIX & VON GONTARD,

By: */s/ Andrew D. Ryan*
Andrew D. Ryan, KS # 17971
600 Washington Avenue, 15th Floor
St. Louis, MO 63101-131
Aryan@sandbergphoenix.com

*Attorneys for Defendant*
*Central Loan Administration & Reporting*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of November, 2010, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all parties and counsel of record in the subject matter.

/s/ Steven Martin Aaron
Attorney

**<u>INDEX TO EXHIBITS</u>**

Exhibit 1: Affidavit of William C. Hultman

Exhibit A: Mortgage executed March 23, 2007

Exhibit B: People's Bank's Membership Application

Exhibit C: MERS' Terms and Conditions

Exhibit D: MERS' Rules of Membership

Exhibit E: MERS' "Milestone"

Exhibit F: TMST's Membership Agreement with MERS

Exhibit 2: *In re Box*, Stipulated Order Granting Relief From Automatic Stay