# UNITED STATES DISTRICT COURT
for the
DISTRICT OF KANSAS

| | | |
|---|---|---|
| TROY D. RENKEMEYER, HUSBAND AND WIFE AS JOINT TENANTS,<br><br>SUSAN M. RENKEMEYER, HUSBAND AND WIFE AS JOINT TENANTS<br><br>Plaintiff<br><br>v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.<br><br>And<br><br>CENTRAL LOAN ADMINISTRATION & REPORTING,<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 10-CV-2415 JWL/DWB |

**PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiffs Troy D. Renkemeyer and Susan M. Renkemeyer (ñPlaintiffsò), pursuant to Federal Rule of Civil Procedure 56(c)(1)(B), respectfully submit the following reply to Defendantsô Memorandum In Opposition To Plaintiffôs Motion For Summary Judgment, which is based on the incorporation by reference of the arguments set forth in Defendantsô Joint Motion for Summary Judgment.

## I. STATUS OF CASE

Plaintiffs filed a Complaint to Quite Title in July, 2010 in which it named the two Defendants, Mortgage Electronic Registration Systems, Inc. (ñMERSò) and Central Loan Administration & Reporting (ñCENLARò) as defendants. CENLAR failed to timely file

its Answer. Plaintiffs then filed a Motion for Default Judgment against CENLAR based on its failure to file an Answer. After the Answer was filed late, Plaintiffs withdrew their Motion for Default Judgment. Plaintiffs then filed a Motion to Dismiss the MERS as a defendant as they believed MERS was not a necessary party to the lawsuit, which was denied.

Plaintiffs then filed a Motion for Summary Judgment pursuant to which Defendants filed a Joint Motion in Opposition of Plaintiffs Motion for Summary Judgment. Defendants also filed its Cross-Motion for Summary Judgment. The arguments set forth by Defendants in its Opposition to Plaintiffsô Motion for Summary Judgment appear to be the same substantive arguments they set forth in affirmative support of their Motion for Summary Judgment. Just the same, Plaintiffs arguments in its Motion for Summary Judgment and this Reply to Defendantsô Memorandum in Opposition of such motion contain the same arguments as their Opposition to Defendants Motion for Summary Judgment. Both parties believe the issues are matters of law and respectfully request the Court to resolve them as such.

The two primary issues before the Court are as follows:

(a) The ñMERS Defect.ò As argued by Defendants, the primary issue of the ñMERS Defectò is whether the language used in the Mortgage executed by Plaintiffs dated March 23, 2007 (ñMortgageò) allegedly granting a security interest to MERS as ñnomineeò for lender failed to result in an agency relationship between MERS and the lender, thereby bifurcating the Mortgage from the promissory note signed by Troy D. Renkemeyer that allegedly exists (ñNoteò). Defendants argue that it did create an agency relationship, and therefore, no bifurcation of the mortgage and Note occurred.

After multiple requests by Plaintiffs prior to and after the start of this litigation, Defendants have yet to produce an executed copy of the Note and the assignments of the Note from the original lender to the purported current lender. This is an action to quite title based on the allegation that no valid mortgage exists on the property. Defendants claim they have documents that prove there is a mortgage on the property, which include not only the Mortgage, but the Note and the assignments of the Note to the current lender. Thus, in addition to the argument above, Plaintiffs argue that because Defendants are attempting to prove the enforceability of documents that are required to be in writing per the statute of frauds, they should be required to produce such documents. See K.S.A § 33-106. See also *JDN Development Company v. Terra Venture, Inc.*, 265 F.Supp.2d 1239 at 1252. Further, unless they are produced, they should be unable to use them as the basis to create and enforce an agency relationship with the current lender as described above for the purpose of arguing the documents are enforceable. Plaintiffs are aware that Defendants may currently have the executed documents, or may yet produce them prior to the argument of this case.

(b) <u>The Failure to Identify the Debt Defect</u>. Plaintiffs claim that the Mortgage fails to identify the debt that it purports to secure because it provides that it secures a note executed by ñBorrowerò which is defined in the Mortgage as ñTroy D. Renkemeyer and Susan M. Renkemeyer Husband and Wife.ò No such debt exists. Although the term ñBorrowerò is unambiguously defined in the definitional section of the document, Defendants claim that it was somehow re-defined in Paragraph 13 that limited its definition to include only Troy Renkemeyer. Plaintiffs argue that Paragraph 13 did not re-define the term, but recognized the fact that there may be subsets of people included in

the definition of ñBorrowerò that have differing rights and obligations under the Mortgage. It doesnôt change the fact that the Mortgage unambiguously (i) defines the ñBorrowerò to include both spouses, and (ii) identifies the debt that it purports to secure as a note executed by ñBorrowerò which includes both spouses. No such debt exists. In any event, Plaintiffs argue that because Defendants have yet to produce an executed copy of the Note and the assignments of the Note, per the statute of frauds they should be unable to use such documents as a basis of establishing who the current ñLenderò in order to identify the debt so that the document can be enforced. *Id.* In any event, if the Note is not enforceable as a result of the statute of frauds, there cannot be a debt in which the Mortgage identifies. Defendants need to be able to show a debt is identified by the Mortgage that is an enforceable debt. Thus, the Defendants should be required to produce the documents if they wish to show they are enforceable.

## II. The “MERS Defect”

### A. *Landmark* Case.

Defendants argue there is not a defect because the language in the Mortgage creates an agency relationship, thereby precluding bifurcation of the Mortgage from the Note. This is not supported by current Kansas law. It claims that *Landmark National Bank v. Kesler,* 289 Kan. 528, 216 P.3d 158 (2009) somehow is inapplicable to the issues raised in this case. Although in *Landmark* the issue before the Court was related to MERS motion to set aside a default judgment and a motion to intervene, in reaching its conclusion the Court analyzed in great detail whether or not the relationship between MERS and the lender constituted an agency relationship under Kansas law.

The Court in *Landmark* made its opinion very clear that the language used in MERS mortgages did not create an agency relationship between MERS and the lender under Kansas law. As argued by Defendants in their Memorandum in Opposition to Plaintiffs Motion for Summary Judgment, and as argued by the Court in *Landmark*, this is the pivotal issue related to the ñMERS Defect.ò We agree. The Kansas Supreme Court concluded as clearly as possible that the language used in the mortgage in that case, which is identical to the relevant language in the Mortgage in this case, does not create an agency relationship.

Defendants attempt to hide this clear opinion of the Kansas Supreme Court by raising various non-persuasive arguments. They argue that *Landmark* is inapplicable because the holding was procedural in nature (i.e. that a default judgment could not be set aside and MERS did not have a right to intervene), rather than an actual holding that the MERS defect exists. However, as stated above, the Court underwent a detailed analysis of whether an agency relationship existed between MERS and the lender to reach its conclusions set forth in the holding, even though the holding itself related to a procedural matter.

Defendants then allege that the purported membership agreements between MERS and the thousands of lenders that are customers of MERS contain language that create an agency between MERS and the lenders. Defendants argue that this purported agency should be ñinfusedò into the Mortgage. It should not. First, the mortgagors and debtors are not in privity with MERS or the lenders with respect to such membership agreements. They were not put on notice of such membership agreements or the agency relationship between MERS and the lenders. Second, the parol evidence rule precludes

the consideration of these membership agreements in constructing the meaning of the words in the Mortgage. See *Torre v. Federated Mut. Ins. Co.* 854 F. Supp 790 at 830 (D. Kan 1994) (citing *Simon v. Nat. Farmers Organization, Inc.*, 250 Kan. 676, 829 P.2d.) After *Landmark*, there is no ambiguity in the meaning of the word ñnomineeò that would require the consideration of parol evidence.

Defendants also state that the *Landmark* Court did not have the information about the membership agreements available to it. However, Defendants failed to provide any evidence that this information was not available and considered. The presumption is that all information that MERS as a party viewed as relevant was admitted into evidence. If it was not, MERS had the opportunity to do so but failed.

B. Bellistri and Ocwen Cases

Defendants attempt to insinuate that the Court in *Mortgage Electronic Registration Systems, Inc. v.* Bellistri, 2010 WL 2720802 (E.D. Mo. July 1, 2010) somehow expressed its view about the substantive issue at hand ï whether an agency relationship is created from the language in the MERS mortgage, thereby precluding bifurcation of the mortgage. The issues in Bellistri addressed the issues of standing, due process, and full faith and credit principles. It did not address the issues of agency or the bifurcation of the mortgage from the note in any manner. As such, this case adds no value to the analysis at hand.

*Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619 (Mo. App.2009) involved similar issues of standing as well. As Defendants argue, it did not actually hold that an agency relationship failed to exist, nor that the mortgage was in fact bifurcated

from the note. However, as in *Landmark*, the Missouri Appellate Court in *Ocwen* did go to great lengths to analyze these substantive issues and came to nearly the same conclusions as the *Landmark* Court, that without agency, bifurcation occurs and the mortgage is ineffectual. In fact, the Court in *Landmark* quoted the *Bellistri* Court as follows:

> The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note. [Citation omitted.] Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. [Citation omitted.] The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust.

See *Landmark* at 167. Thus, again the issue is clarified by the Ocwen Court ï that without agency, the MERS mortgage is ineffectual. The only issue is whether an agency relationship exists. For purposes of Kansas law, the Court in *Landmark* provided its viewpoint that agency does not exist in a MERS mortgage.

C. Other Points

Defendants also argue that the Restatement (Third) of Property, § 5.4 for the proposition that the mortgage is enforceable. However, as argued by Defendants, the primary premise of this provision is that agency must exist. Thus, the pivotal issue again is whether the MERS mortgage creates an agency relationship. Further, it must be presumed that the Court in *Landmark* considered all law available, including the Restatement (Third) of Property, in its conclusion that an agency relationship did not exist.

Defendants have yet to produce an executed copy of the Note and the assignment

of the Note. The statute of frauds requires these documents to be in writing to be enforceable. See K.S.A § 33-106. See also *JDN Development Company v. Terra Venture, Inc*., 265 F.Supp.2d 1239 at 1252. Without the written assignments from the original Lender identified in the Mortgage and Note, Defendants cannot identify and establish the current ñLenderò is with respect to the Mortgage and Note. Thus, MERS is claiming that it is the agent of a party, but cannot establish how such agency relationship originated or produce what document it is based upon (i.e. the assignment document.) Although Plaintiffs believe this point alone resolves the issue, they contend they are entitled to summary judgment whether the documents are produced or not.

To gain merit from the Court, Defendants go to great lengths to describe how MERS was established by quasi-governmental organizations to do good things. This should not be an argument in their favor. Because it was founded from quasi-governmental organizations such as Fannie Mae, it has an even greater responsibility to the public to not negligently draft its documents. It is a ñfor-profitò entity that elected to accept the great responsibility of managing mortgages electronically, for which it is well compensated. It negligently drafted the documents that it repeatedly uses for the mortgages that it manages. It should be held to the same standard as any other large for-profit entity that has the upside of making large amounts of money if successful, and subject to the same financial penalties for its failures. The fact that they manage so many mortgages does not justify them negligently drafting their documents. Rather, the fact that they were entrusted with such a great responsibility, which came with the opportunity to earn large profits, if anything should create a higher standard to be met.

## III. The Failure to Identify the Debt Defect

A. Paragraph 13 in General.

The logic used by Defendants in analyzing Paragraph 13 of the Mortgage is misplaced. Defendants argue this paragraph ñeffectively excludes from the definition of óBorrowerô any co-signers such that the mortgage properly identifies the obligor of the underlying obligationé .ò This paragraph does not modify in any way what persons are included in the definition of ñBorrower.ò It simply creates a subset of potential people that <u>are included</u> in the definition of ñBorrowerò but are not persons that signed the note. It then provides additional ñrulesò or ñobligationsò for such people. In no way does it modify who is considered a ñBorrower.ò The purpose of Paragraph 13 is to clarify that in the event such a person exists (i.e. a person who has an interest in the property but is not an obligor on the note), such person does not become obligated on the note by reason of signing the Mortgage, etc. It does not modify the affect of any definition or other Section of the document in any way.

Most importantly, Paragraph 13 of the Mortgage does not reference or modify Paragraph E of the Definitions section containing the definition of ñNote.ò Throughout the Mortgage, it references the ñNoteò as the debt for which the Mortgage purports to secure. Thus, the definition of ñNoteò is pivotal on what debt the Mortgage secures. This is the paragraph containing the defect. If the Mortgage intended to describe the debt it purports to secure as the debt signed by Troy D. Renkemeyer, then either (a) the definition of ñNoteò would have referenced ñthe promissory note signed by Troy D. Renkemeyerò, or (b) the definition of ñNoteò would have referenced ñBorrowerò <u>and</u> the term ñBorrowerò would include only the name ñTroy D. Renkemeyer.ò Rather, it

referenced the promissory note signed by ñBorrowerò which included both spousesô names.

This definition of ñNoteò is three paragraphs below the definition of Borrower. It is presumed that the definition of the term ñNoteò was intended to include those parties specifically identified in the definition of Borrower. Any other conclusion would be adding and creating meaning to a contract without a basis in the language of contract for such meaning. Parol evidence is inadmissible to alter or vary the terms of a contract that is complete, unambiguous, and free from uncertainty. See *Torre v. Federated Mut. Ins. Co.* 854 F. Supp 790 at 830 (D. Kan 1994) (citing *Simon v. Nat. Farmers Organization, Inc.*, 250 Kan. 676, 829 P.2d.) It would be unnecessarily adding extrinsic evidence to clear and unambiguous document. The parol evidence rule prohibits such construction. The mortgage clearly and unambiguously states the debt it secures is a debt signed by the Borrower who is defined as ñTroy D. Renkemeyer and Susan M. Renkemeyer as Husband and Wife.ò Further, these names were in typed form, while the other language was in pre-printed form showing special attention given to this language.

B. <u>Beckhart Case.</u>

Defendants cite *In re Beckhart*, 2010 WL 1416807 (Bankr. E.D.N.C. 2010) as support for their theory that Paragraph 13 of the Mortgage limits the definition of ñBorrowerò to exclude Susan Renkemeyer thereby eliminating a contradiction between the definition of ñBorrowerò in the Mortgage and the terms of Note. First, this case has no precedential value as it was heard by a North Carolina Court. Second, the issue is not whether a contradiction exists between the definition of ñBorrowerò in the Mortgage and

the terms of the Note. Rather, the issue is whether the Mortgage identifies the Note as the debt it secures. As stated above, the paragraph of the Mortgage identifying the debt is the paragraph providing the definition of ñNote.ò It referenced a promissory note signed by ñBorrowerò which was defined eleven lines above the definition of ñNoteò to include both spouses. The definition of Borrower is not re-defined by Paragraph 13, but rather a subset of the term ñBorrowerò is created by Paragraph 13. Without the term ñBorrowerò being re-defined, the Mortgage refers to a note executed by both spouses. There is no ambiguity in the language used.

C. No Signed Note or Assignment of Note and Mortgage

Defendants have yet to produce an executed Note or assignment(s) of the Note to any party. As such, no evidence of the debt actually exists. Further, no evidence exists showing the identity of the actual ñLenderò identified in the Mortgage. Although Defendants claim CENLAR is the servicing agent for the current Lender, it cannot establish the identity of such Lender.

The statute of frauds requires all transactions involving real estate to be in writing even if evidence of the transaction already exists. See K.S.A § 33-106. See also *JDN Development Company v. Terra Venture, Inc.*, 265 F.Supp.2d 1239 at 1252. As such, a judicial admission by Plaintiffs of the existence of a promissory note should not be sufficient to meet the Defendants burden to produce the Note in order to enforce it. Further, the statute of frauds requires an assignment of the Note and Mortgage to be in writing. *Id.* Because no assignments have been produced, no evidence has been introduced establishing the identity of the current Lender as provided for by the Note and

Mortgage. How can the Defendants argue that the Mortgage properly identifies a debt when it cannot establish the identity of the Lender of such debt within the boundaries of the statue of frauds? Again, although Plaintiffs believe this point alone resolves the issue, they contend they are entitled to summary judgment with or without the executed documents.

**IV. Affirmative Defenses**

Defendants argue they are protected pursuant to certain affirmative defenses, including (a) Defendantõs failure to state a claim for various reasons, (b) latches, (c) unclean hands, (d) unjust enrichment (e) reformation, and (f) equitable lien. Defendants should not be granted equitable relief when the causes of action are based solely on contract. See *In re Motor Fuel Temperature Sales Practices Litigation*, 534 F.Supp.2d 1214 (D. Kan 2008.) Further, the negligence of Defendants in drafting the Mortgage and Note should negate their ability to invoke equitable claims of relief. In any event, Plaintiffs have argued above that as a matter of law, they have a stated a claim upon which relief can be granted.

A. Latches: As set forth by this Court in 2007, the doctrine of latches requires not only a delay by Plaintiffs of prosecuting its case, but also that such delay resulted in a material prejudice to the Defendants. See *Sprint Communications Company L.P. v. Vonage Holdings Corp.*, 500 F.Supp.2d 1290 at 1335 (D. Kan 2007) (citing *A.C. Aukeratan Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1032 (Fed.Cir. 1992) (en banc)). No evidence has been introduced showing that Defendants were materially prejudiced by the delay in prosecution of the case. In any event, any delay resulted in additional time of the mortgage being deemed secured per its county recording.

B. Unclean Hands. The doctrine of unclean hands requires the party seeking equity in the Courts to have clean hands. *T.S.I. Holdings, Inc., V. Lawrence S. Jenkins And Roger W. Hood, M.D.*, 924 P.2d 1239, 260 Kan. 703 (Kan. 1996). No evidence exists to suggest it did not have unclean hands as it did not prepare the Mortgage and the Note.

C. Unjust Enrichment. This Court also set forth the required elements of unjust enrichment in *Regal Ware, Inc. V. Vita Craft Corp*, 653 F.Supp.2d 1146 at 1151 (D. Kan 2006) to include (a) a benefit being conferred upon the receiving party, (b) knowledge by the receiving party of the benefit, and (c) the circumstance resulting from the retention of the benefit by the receiving party being inequitable without payment by it to the other party. In this case, no evidence has been introduced to support any of the required elements of this defense. The only benefit Plaintiffs received was a loan, of which the Plaintiffs will continue to be obligated to repay even if the Court grants the Plaintiffôs motion for summary judgment. Part (c) above requires for Plaintiffs to receive a benefit for which they are not paying Defendants. Because Plaintiffs will continue to be obligated to repay for the benefit it received (i.e. the loan), this element is not present and thus Plaintiffs are not unjustly enriched.

The negligence of Defendants in drafting the Mortgage and Note should weigh against them in this analysis. In addition, *In re Motor Fuel Temperature Sales Practices Litigation* provided that unjust enrichment should not be a form of relief when the disputes are based on contract.

D. Reformation. Defendants argue relief through reformation because of mutual mistake and / or scrivenerôs error. Reformation requires mutual mistake of the

parties. To obtain relief, Defendants must show mutuality of mistake. The documents were not drafted by the Plaintiffs. See *Torre v. Federated Mut. Ins. Co.* 854 F.Supp. 790 at 831 (D. Kan 1994) (citing Brown *v. Equitable Life Assur. Soc. of U.S.*, 766 F.Supp. 928, 932 (D.Kan.1991.) No evidence exists to suggest that Plaintiffs made a mistake. Thus, reformation should not be available because at most, only unilateral mistake can be shown.

E. Equitable Lien. Defendants argue that because the intent of the parties was to provide for a security interest to be granted, then they are entitled to an equitable lien. Intent is not the primary factor to determine whether an equitable lien is proper. In any event, the negligence of Defendants in the drafting of the documents, which is the sole cause for the circumstances in which they find themselves, should weigh heavy against such an equitable lien. Further, because the obligation of Troy Renkemeyer will continue regardless of the result of this litigation, the only affect of a summary judgment in Plaintiffôs favor would be to eliminate the security interest. If every security instrument that attempted, but failed to grant a security interest were replaced with an equitable lien, there would be no purpose of the statutes setting forth the requirements of the security interest. These are issues of law, rather than equity.

WHEREFORE, Plaintiffs respectfully request this Court to grant their Motion for Summary Judgment.

Date: ____________________

Respectfully submitted,

s/__________________________________________

Troy Renkemeyer
KS Bar #17913
Attorney for Plaintiffs
RCW Law Firm, LP
10975 Benson Drive, Suite 570
Overland Park, KS 66210
Phone: (913) 906-9810
Fax: (913) 906-9840
trenkemeyer@rcwlawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, January 7, 2011, the foregoing document was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Steven M. Aaron
Hush Blackwell Sanders LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
steve.aaron@huschblackwell.com
ATTORNEYS FOR DEFENDANT
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.

Andrew D. Ryan
Jesse B. Rochman
Andrew D. Ryan
Sandberg, Phoenix & von Gontard, P.C.
600 Washington Avenue, 15th Floor
St. Louis, MO 63101-1313
aryan@sandbergphoenix.com
jrochman@sandbergphoenix.com
aryan@sandbergphoenix.com
ATTORNEYS FOR DEFENDANT
CENTRAL LOAN ADMINISTRATION
& REPORTING

s/____________________________
Troy Renkemeyer